IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BURNS & McDONNELL ENGINEERING COMPANY, INC., and LOUISA ENVIRONMENTAL PROJECT PARTNERS, | ) ) ) ) ) | CIVIL ACTION NO: 8:12-cv-_____ |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| TANK CONNECTION, L.L.C., NEIGHBORS & ASSOCIATES, INC., and CHARTIS SPECIALTY INSURANCE COMPANY f/k/a AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, | ) ) ) ) ) ) ) ) | **COMPLAINT AND JURY TRIAL DEMAND** |
| Defendants. | | |

Plaintiffs Burns & McDonnell Engineering Company, Inc. and Louisa Environmental

Project Partners hereby allege and state as follows:

**THE PARTIES**

1.     Plaintiff Burns & McDonnell Engineering Company, Inc. ("Burns") is a Missouri

corporation, authorized to do business in Nebraska with its office and principal place of business

located in Kansas City, Missouri.

2.     Plaintiff Louisa Environmental Project Partners ("LEPP") is a joint venture

consisting of its joint venture partners:  (a) Burns; and (b) Kiewit Industrial Co. n/k/a Kiewit

Power Constructors Co. ("Kiewit"), a Delaware corporation, with its office and principal place of

business located in Omaha, Douglas County, Nebraska.

3.      Defendant Tank Connection, L.L.C. ("Tank") is a Kansas limited liability company with its office and principal place of business located at 1801 South 21st Street, Parsons, Labette County, Kansas 67357.

4.      Defendant Neighbors & Associates, Inc. ("Neighbors") is a Kansas corporation with its office and principal place of business located at 3609 N. 16th Street, Parsons, Labette County, Kansas 67357.

5.      Defendant Chartis Specialty Insurance Company, formerly known as American International Specialty Lines Insurance Company (hereafter "Chartis", or alternatively, "AISLIC"), is an Illinois corporation with its principal place of business located at 175 Water Street, 18th Floor, New York, New York 10038. Burns, LEPP and Tank were insureds of Chartis.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as it is an action between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district.

## THE PROJECTS AND CONTRACTS

8.      Sometime in 2005, Mid-American Energy Company ("Mid-American") advertised that it would seek proposals from contactors for the construction of a dry flue gas desulfurization system and pulse jet fabric filter at its Louisa, Iowa power generating station (the "Louisa Project").

9.      On or about December 20, 2005, Kiewit and Burns entered into a joint venture agreement to form LEPP in order to pursue the award of the Louisa Project contract from Mid-American.

10.     On or about December 30, 2005, LEPP entered into a contract with Mid-America for the Louisa Project.

## THE TANK SUBCONTRACT

11.     On or about May 17, 2006, LEPP, as Contractor, entered into a written subcontract agreement with Tank, as Subcontractor, (the "Subcontract") pursuant to which Tank was to design, furnish, and construct a steel recycle ash silo, lime silo and a waste ash silo.

12.     The Subcontract required Tank to maintain commercial general liability ("CGL") insurance to include contractual liability protection.  The Subcontract also required Tank to cause its CGL and all excess/umbrella liability insurers to name as an additional insured LEPP, as the Contractor, to the maximum limits of liability coverage carried by Tank.

13.     Tank carried the required CGL insurance under policy no. EG2026110 issued by AISLIC and the excess/umbrella liability insurance under policy no. EGU2026205 also issued by AISLIC.

14.     LEPP is an additional insured on the aforementioned insurance policies.

15.     The Subcontract between LEPP and Tank provided that Tank would defend and indemnify LEPP for suits such as that of Gary E. Seger, and such duty was not limited by any insurance policy.  The Subcontract reserved in LEPP the right to defend itself.

16.     The Subcontract provides that if one party institutes suit against the other in connection with any dispute arising under the Subcontract, the prevailing party is entitled to recover all costs, expenses and attorneys' fees.

## AISLIC POLICIES

17.    Under the insuring agreement of the Primary Policy, AISLIC agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this coverage applies" and had "the right and duty to defend any suit seeking those damages."

18.    The Primary Policy covers bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in an "insured contract", provided that the bodily injury or property damage occurs subsequent to the execution of such contract.  The term "insured contract" includes "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for bodily injury or property damage to a third person or organization," with "tort liability" meaning "liability that would be imposed by law in the absence of any contract or agreement."

19.    The Primary Policy provides coverage for LEPP for reasonable attorney fees and necessary litigation expenses such as those incurred by Burns in its defense of the lawsuit by Gary E. Seger.

20.    The Primary Policy provides that "[s]oley for purposes of liability assumed in an insured contract, reasonable attorneys fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of bodily injury or property damage, provided:  (a) [l]iability to such party for, or for the cost of, that party's defense has also been assumed in the same insured contract; and (b) [s]uch attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged."

21.    Tank is a Named Insured under the Primary Policy.

22.     Under Endorsement 6 of the Primary Policy, any person or organization required to be added as an additional insured by written contract with Tank is included as an insured under the Primary Policy with respect to liability arising out of Tank's ongoing operations performed for that insured.   Given that the Subcontract required Tank to include LEPP as an additional insured under its CGL policies up to the maximum limits maintained for such coverage, LEPP is an insured under the Primary Policy.

23.     The Primary Policy provides that if a joint venture is an insured, the members are also insured with respect to the conduct of the joint venture's business.   As a joint venture partner of LEPP, Burns is also an insured under the Primary Policy.

24.     The Umbrella Policy follows the form of the Primary Policy, with the insuring clause providing that AISLIC "will pay on behalf of the insured that portion of the ultimate net loss in excess of the retained limit which the insured becomes legally obligated to pay as damages because of bodily injury . . . to which this insurance applies, due to (1) liability imposed upon the insured by law or (2) liability assumed by the insured under an Insured Contract" but only "if and to the extent covered by underlying insurance."

25.     Under the Umbrella Policy, the term "insured" means any person or organization qualifying as such in the Primary Policy.   Thus, LEPP and Burns are both insureds under the Umbrella Policy.

26.     Under the Umbrella Policy, the term "Insured Contract" has the same meaning as in the Primary Policy.

27.     Under the Umbrella Policy, the term "ultimate net loss" means "the total sum of which the insured, or any carrier as its insurer, or both, become obligated to pay by reason of bodily injury . . . either through adjudication or compromise, including all expenses for

settlement, adjustment, investigation and defense of claims, but excluding the salaries of any of the underlying insurer's or our employees."

## THE SEGER ACCIDENT AND LAWSUIT

28.     Gary E. Seger was an employee of Valmont who worked at Valmont's facility in Valley, Nebraska as a paddle operator on the molten zinc tank.  On December 13, 2006, during the time within which Plaintiffs were insured by AISLIC, an accident occurred at the Valmont galvanization plant, burning, maiming and seriously injuring Mr. Seger.

29.     In January 2008, Mr. Seger and his wife, Twila Seger sued Tank and others for his personal injuries in Omaha, Nebraska, in the U.S. District Court for the District of Nebraska, Case No. 8:08-CV-75.

30.     On October 13, 2008, Mr. and Mrs. Seger amended their lawsuit to add Burns and others as co-defendants (the "Seger Lawsuit") and alleging negligence causing harm to Plaintiffs and seeking recovery of in excess of $4 million in special damages alone, and general damages for permanent pain and suffering, total disability. loss of limbs, scarring and embarrassment.

31.     The Seger Lawsuit alleged in Count I that all of the Defendants were negligent in failing to design, fabricate and weld the I-beams in a manner which prevented air and moisture from being entrapped within the structure during the galvanization process.

32.     Seger's lawyers claimed damages of between $28 million and $58 million, and on December 22, 2009 indicated a willingness to accept AISLIC CGL and Umbrella Policy limits.

## DEMANDS AND TENDER TO TANK/AISLIC

33.     On November 7, 2008, Burns made demand on AISLIC for defense and indemnity as an additional insured on Tank's CGL policy no. EG2026110 and excess liability policy no. EGU2026205 as a joint venturer of LEPP.

34.     On November 7, 2008, Burns also made demand on Tank, as a joint venturer of

LEPP, that Tank defend, hold harmless, and indemnify Burns from the Seger Lawsuit.

35.     AISLIC did not respond to Burns' demand until after the deadline for Burns to

file an Answer in the Seger Lawsuit.

36.     Burns hired the law firm of Shughart Thomson & Kilroy, P.C. (later "Polsinelli

Shughart" after merger) as defense counsel, which firm began its investigation and prepared and

filed an Answer on behalf of Burns.  Burns also hired the law firm of Woods & Aitken, LLC as

local counsel in Nebraska.

37.     On January 7, 2009, since AISLIC had not responded to Burns' demand, Tank

also demanded AISLIC defend and indemnify Burns on the Seger Lawsuit.

38.     On February 18, 2009, AISLIC accepted with "absolutely no reservation", the

tender to defend and indemnify Burns in accordance with the contractual indemnity provision of

the Subcontract and based upon its status as an additional insured under Tank policy

EG2026110, and tendered Tank's defense to lawyer, William Selde of the law firm of Sodoro

Daly & Sodoro, P.C. (the "Sodoro Firm") as defense counsel for Burns.

39.     On February 19, 2009, Tank objected to the February 18, 2009 letter, on the basis

that AISLIC failed to mention the excess policy no. EGU2026205, and the Sodoro Firm had an

irreconcilable conflict due to Burns' indemnity claim against Tank.

40.     On March 2, 2009, Burns renewed its demand under the excess policy no.

EGU2026205 and objected to the offer of the Sodoro Firm as joint defense counsel to both Tank

and Burns and demanded separate defense counsel for Burns because of the conflict between

Burns and Tank.

41.     On and after April 1, 2009, Burns requested AISLIC continue employing as Burns' independent defense counsel the law firms of Polsinelli Shughart and Woods & Aitken, local counsel.

42.     On September 24, 2009, AISLIC agreed to pay the defense costs of Burns for the Polsinelli Shughart and Woods & Aitken law firms, denied the conflict of interest of the Sodoro Firm and attempted to reserve all rights.  AISLIC refused to pay the rates that Burns had agreed to pay the Polsinelli Shughart and Woods & Aitken law firms and agreed only to pay the same rates it was paying the Sodoro Firm, a rate that was substantially less.

43.     The Seger Lawsuit continued through extensive discovery, including the selection and retention of expert witnesses, and enforcement of a third-party subpoena upon Valmont, all at the expense of Burns and LEPP with no reimbursement from Tank or AISLIC.

44.     On November 19, 2009, Burns wrote to AISLIC demanding immediate reimbursement for all past defense costs incurred through the October 2009 billings, plus reimbursement on a going forward basis for the costs of Burns' independent counsel at their normal and customary rates, plus expenses, and payment for experts and all other costs.  Burns also rejected AISLIC's attempt to reserve its rights, based upon the February 18, 2009 waiver of the same.

45.     On January 22, 2010, AISLIC agreed to reimburse Burns for defense expenses (including expert fees) according to the usual and customary hourly rates charged by the Polsinelli and Woods firms, subject to an audit by an outside consultant.  For time through September 2009, AISLIC reduced billings by $100,000, roughly one-third of the defense costs Burns had actually incurred.  As to defense costs going forward, AISLIC agreed to reimburse Burns for defense costs at less than the rate Burns was paying for its defense.

46.     Burns did not consent to the reduced payments made to its defense counsel.

47.     At a mediation on August 26-27, 2010, the Seger Lawsuit was settled due to the effort of Polsinelli Shughart for substantially less than policy limits.

48.     LEPP, on behalf of Burns, paid to Polsinelli Shughart reasonable attorneys' fees and necessary litigation expenses in the amount of $1,568,280.84 in defense of the Seger Lawsuit, of which AISLIC has only reimbursed the amount of $922,780.76, leaving the amount of $645,500.08 unreimbursed by either AISLIC or Tank, an amount if paid would in addition to the settlement paid not exceed policy limits.

49.     Despite repeated demands, prior to and after the mediation, Burns and LEPP are still owed outstanding defense costs totaling over $645,500, which Tank and AISLIC have refused to pay.

## COUNT I

(Breach of Contract Against Tank)

50.     Plaintiffs incorporate by reference each allegation contained in Paragraphs through 49 of the Complaint as if fully set forth herein.

51.     Under the Subcontract, Tank agreed to defend and indemnify LEPP and its joint venture partner, Burns, against, and save them harmless from any and all claims, suits or liability for personal injury, such as the Seger Lawsuit, including the payment of any and all loss, damage, costs, expenses and attorneys' fee suffered or incurred on account of any breach of any provision or covenant of the Subcontract, even if LEPP or Burns exercised their right to defend themselves.

52.     Tank has breached its Subcontract with LEPP by failing to perform its obligations and by failing to defend and fully indemnify LEPP and its joint venture partner, Burns, from

their attorneys' fees and expenses incurred in the defense of the Seger Lawsuit, in an amount in excess of $645,500.

53.    Pursuant to the Subcontract, LEPP and Burns are entitled to recover all costs, expenses and attorneys' fees incurred herein in enforcing their right to indemnity against Tank, in addition to any other relief granted by the Court.

WHEREFORE, Plaintiffs Burns & McDonnell Engineering Company, Inc. and Louisa Environmental Project Partners pray for judgment against Defendant Tank Connection, L.L.C. for an amount in excess of $645,500, for an award of attorneys' fees and costs incurred herein, for prejudgment interest, and for such other and further relief as this Court deems just and proper.

**COUNT II**

54.    Plaintiffs incorporate by reference each allegation contained in Paragraphs 1 through 53 of the Complaint as if fully set forth herein.

55.    The Certificate of Insurance issued by Tank to LEPP lists the insured as "Neighbors and Associates, Inc. d/b/a Tank Connection, LLC".

56.    In endorsement 17 of the Primary Policy, "Neighbors and Associates, Inc. d/b/a Tank Connection, LLC" was added to Item 1 of the Declarations as a named insured.

57.    To the extent that Tank is merely a fictitious name for Neighbors, out of abundance of caution, Burns and LEPP seek damages from Neighbors for the same reasons as alleged in Count I against Tank.

WHEREFORE, Plaintiffs Burns & McDonnell Engineering Company, Inc. and Louisa Environmental Project Partners pray for judgment against Defendant Neighbors and Associates, Inc. for an amount in excess of $645,500, for an award of attorneys' fees and costs incurred

herein, for prejudgment interest, and for such other and further relief as this Count deems just and proper.

## COUNT III

(Breach of Insurance Contract Against AISLIC Under Primary Policy)

58.      Plaintiffs incorporate by reference each allegation contained in Paragraphs 1 through 57 of the Complaint as if fully set forth at this point.

59.      As additional insureds, LEPP, and its joint venture partner Burns, were entitled to a defense of the Seger Lawsuit by AISLIC under the Primary Policy.

60.      Burns was entitled to select independent counsel to defend the Seger Lawsuit at AISLIC's expense.

61.      AISLIC agreed to reimburse Burns for the defense costs of Burns' choice of counsel without any reservation of rights under the Primary Policy.

62.      AISLIC was obligated under the Primary Policy to reimburse Burns for its reasonable attorneys' fees and necessary litigation expenses incurred in Burns' defense of the Seger Lawsuit.

63.      Despite repeated demands, AISLIC has refused to reimburse LEPP or Burns for the unpaid amount of reasonable attorneys' fees and necessary litigation expenses, in breach of its contractual obligations to LEPP and Burns as insureds under the Primary Policy.

64.      As a direct result of AISLIC's breach of contract, LEPP and Burns have been damaged in an amount in excess of $645,500.

WHEREFORE, Plaintiffs Burns & McDonnell Engineering Company, Inc. and Louisa Environmental Project Partners pray for judgment against Defendant Chartis Specialty Insurance

Company in an amount in excess of $645,500, for prejudgment interest, for their attorneys' fees and costs incurred herein and for such other relief as this Court deems just and proper.

<u>COUNT IV</u>

(Breach of Insurance Contract Against AISLIC Under The Umbrella Policy)

65.     Plaintiffs incorporate by reference each allegation contained in Paragraphs 1 through 64 of the Complaint as if fully set forth herein.

66.     LEPP has made demand upon Tank for reimbursement of its unpaid defense costs and expenses incurred in the Seger Lawsuit.

67.     Tank's obligation under the Subcontract to indemnify LEPP for its attorneys' fees and expenses incurred in the defense of Burns in the Seger Lawsuit constitutes liability for damages assumed in an "insured contract" within the meaning of the Primary Policy and Umbrella Policy.

68.     With the Primary Policy exhausted, AISLIC has a duty under the Umbrella Policy to indemnify Tank for Tank's liability to LEPP under the Subcontract for the remaining unpaid reasonable attorneys' fees and necessary litigation expenses incurred by LEPP in defense of Burns in the Seger Lawsuit.

69.     LEPP is entitled to direct reimbursement by AISLIC, in fulfillment of AISLIC's duty to indemnify Tank for Tank's liability to LEPP assumed in the Subcontract, in LEPP's capacity as an insured under the Umbrella Policy and/or as a third-party beneficiary of Tank's right to indemnification under the Umbrella Policy.

70.     AISLIC has refused Tank's demands that Chartis indemnify Tank for Tank's liability to LEPP assured in the Subcontract for the remaining unpaid reasonable attorneys' fees and necessary litigation expenses incurred by LEPP in defense of Burns in the Seger Lawsuit.

12

71.     As a direct result of AISLIC's breach of its duties under the Umbrella Policy,

LEPP and Burns have been damaged in an amount in excess of $645,500.

WHEREFORE, Plaintiffs Burns & McDonnell Engineering Company, Inc. and Louisa

Environmental Project Partners pray for judgment against Defendant Chartis Specialty Insurance

Company f/k/a American International Specialty Lines Insurance Company in an amount in

excess of $645,500, for prejudgment interest, for their attorneys' fees and costs incurred herein

and for such other relief as this Court deems just and proper.

## COUNT V

(Claim of Quantum Meruit, Unjust Enrichment and Quasi Contract Against All Defendants)

72.     Plaintiffs incorporate by reference each allegation contained Paragraphs 1 through

71 of the Complaint as if fully set forth.

73.     The defense costs incurred by Plaintiffs in defense and settlement of the Seger

lawsuit conferred a substantial benefit on the Defendants' of a value greatly in excess of the fees

and expenses charged.

74.     Plaintiffs are entitled to recovery of damages determined by the value of the

benefits to the Defendants from the excellent legal representation of Polsinelli Shughart on the

complex Seger case, the result achieved, the responsibilities assumed by Polsinelli Shughart, the

risk of an adverse judgment in excess of policy of limits, and the reputation, experience and

abilities of Polsinelli Shughart.

75.     Defendants were unjustly enriched by the benefits conferred upon them as

compensation in an amount equal to or in excess of the fees and expenses charged by Polsinelli

Shughart.

WHEREFORE, Plaintiffs Burns & McDonnell Engineering Company, Inc. and Louisa Environmental Project Partners pray for judgment against Defendant Chartis Specialty Insurance Company f/k/a American International Specialty Lines Insurance Company in an amount in excess of $645,500, for prejudgment interest, for their attorneys' fees and costs incurred herein and for such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL AT OMAHA, NEBRASKA

Plaintiffs demand trial by jury at Omaha, Nebraska as to all issues triable by jury as a matter of right.

DATED this 5th day of October, 2012.

BURNS & McDONNELL ENGINEERING COMPANY, INC. and LOUISA ENVIRONMENTAL PROJECT PARTNERS, Plaintiffs


BY:   s/ Patrick W. Meyer
      Patrick W. Meyer #16621
      William R. Johnson #15424
      LAMSON, DUGAN and MURRAY, LLP
      10306 Regency Parkway Drive
      Omaha, NE 68114
      (402) 397-7300 – Telephone
      (402) 397-7824 – Facsimile

      **ATTORNEYS FOR PLAINTIFFS**

#554513.2